BARTON MARSHALL WATSON  1867
ATTORNEY AT LAW
A LAW CORPORATION
P.O. Box 4700
Honolulu, Hawaii 96812
Telephone: (808) 533-1000
Facsimile: (808) 533-2211
Email: b.marshallwatson@twc.com

Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KATHLEEN M. WATSON, as an individual, and on behalf of all others similarly situated, and BARTON M. WATSON, as an individual,<br><br>          Plaintiffs,<br><br>  vs.<br><br>UNITED AIRLINES, INC., a Delaware corporation,<br><br><br><br>          Defendant. | CIVIL NO. _____<br><br>**COMPLAINT FOR:**<br>**(1) DECLARATORY JUDGEMENT;**<br>**(2) INTENTIONAL FRAUDULENT MISREPRESENTATION;**<br>**(3)  BREACH OF CONTRACT (IN THE ALTERNATIVE); AND**<br>**(4)  SHERMAN ACT VIOLATIONS**<br><br>CLASS ACTION<br><br>JURY TRIAL REQUESTED |

## COMPLAINT FOR: (1) DECLARATORY JUDGEMENT; (2) INTENTIONAL FRAUDULENT MISREPRESENTATION; (3) BREACH OF CONTRACT (IN THE ALTERNATIVE); AND (4) SHERMAN ACT VIOLATIONS

Plaintiffs respectfully allege to this Honorable Court as follows:

## I. PARTIES

1.   Plaintiff Kathleen M. Watson, hereinafter referred to as "Class Plaintiff," is a citizen of Hawaii.  Class Plaintiff brings this action as an individual, and on behalf of all others similarly situated.   Class Plaintiff requests a jury trial.

2.   Class Plaintiff was the lead plaintiff in an airline overbooking suit in the late 1970's in USDC, Hawaii alleging intentional fraudulent misrepresentation. That suit mirrored a similar suit by Ralph Nader within the District of Columbia Circuit. (Ralph Nader's suit was ultimately dismissed on a factual issue unique to his case.) However, Class Plaintiff's suit was successfully resolved and immediately thereafter notices began being posted all over the United States by airlines giving their customers prior notice of their overbooking policies.  These prior posted notices insulated the posting airlines from future fraud suits trying to duplicate the result obtained by Class Plaintiff.  Most importantly these prior posted notices gave airline customers in the United States information they needed to make a more informed decision on where and how to spend their hard earned money -- and thereby allowing the American free market system in the airline industry to operate more efficiently.

3.   Class Plaintiff is well qualified to represent the proposed class plaintiffs herein as this action is very similar to Class Plaintiff's prior successful airline fraud suit.   Both cases are airline fraud by omission cases.   In the prior successful airline fraud suit, it was alleged that the airline had a duty to disclose its overbooking policy and intentionally failed to disclose it.   In the action herein, it is alleged that United Airlines Inc., had a duty to disclose its checked baggage policy

that maximized "unaccompanied suitcases" on its passenger flights and intentionally failed to disclose it.   As "unaccompanied suitcases" have led to the downing of large passenger airplanes killing all on board, this failure to disclose is particularly egregious given the magnitude of the potential harm.

4.   Plaintiff Barton M. Watson, hereinafter referred to as "Plaintiff II," is a citizen of Hawaii.  Plaintiff II brings this action as an individual and requests a jury trial.

5.   Defendant United Airlines, Inc., hereinafter referred to as "Defendant," or as "United Airlines," is a corporation incorporated in the State of Delaware, with its principal place of business in Chicago, in the State of Illinois.  (Defendant is a wholly-owned subsidiary of United Continental Holdings, Inc., a Delaware corporation with its headquarters in Chicago, Illinois.)    Accordingly, for purposes of diversity jurisdiction, Defendant United Airlines is a citizen of the Delaware and Illinois.

## II.   JURISDICTION AND VENUE

6.   This Honorable Court has original jurisdiction over the subject matter presented by this Complaint because it is filed as a class action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), and because the number of members of all proposed plaintiff classes in the aggregate is greater than 100 (as required by 28 U.S.C. § 1332(d)((5)(B)); the matter in controversy exceeds the sum or value of $5,000,000, exclusive interest and costs (as required by 28 U.S.C. § 1332(d)(2)); and minimal diversity exists.   (Class Plaintiff is a citizen of Hawaii; Defendant United Airlines, for purposes of diversity jurisdiction, can be considered a citizen of Delaware and Illinois.   Therefore, diversity of citizenship exists

as required by 28 U.S.C. § 1332(d)(2)(A).   Furthermore, pursuant to 28 U.S.C. § 1332(d)(4)(A)(i)(I), Class Plaintiff alleges that less than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State of Hawaii, in which this action is originally filed.)

7.   This Honorable Court also has subject matter jurisdiction over the Sherman Act claims (15 U.S.C. § 1) herein pursuant to 28 U.S.C. §§ 1331 and 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

8.   Should this case not be certified as a class action, this Honorable Court has jurisdiction over this matter because there is complete diversity of citizenship pursuant to 28 U.S.C.§ 1332(a), and the amount in controversy (including the punitive damages warranted) exceeds the sum of $75,000, exclusive of interest and costs.

9.   Venue is proper in this District under 28 U.S.C. § 1391 (and pursuant to Sections 4(a) and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22) because a substantial part of the events or omissions giving rise to the claims alleged in this action occurred in this District, and because Defendant United Airlines may be found in, conducts substantial business in, and is subject to personal jurisdiction in this District.

## III.   BACKGROUND AND OVERVIEW

### "Unaccompanied Suitcases" Led to Killing All On Board Airplanes

10.   Increasing the amount of "unaccompanied suitcases" on passenger airplanes is obviously not in the best interests of the safety of the airline passengers.   Unaccompanied suitcases have led to the downing of some of the largest passenger airplanes and killing of all on board.   Although the 1988

Lockerbie Boeing 747 downing caused by an unaccompanied suitcase which killed all 259 passengers from London to New York is the best known example, it was not the first.   The first jumbo jet 747 downed by an unaccompanied suitcase was in 1985 with 329 passengers on board from Montreal to London on Air India.   In that Montreal flight the unaccompanied suitcase was inspected by a portable explosive sniffer, however, the explosive sniffer did not detect the presence of the explosives in the unaccompanied suitcase that later exploded killing all 329 passengers on board the 747.

11.   **"<u>Unaccompanied</u> <u>suitcases</u> led to the downing of four flights, when a bomb inside the suitcase exploded** …"   (Emphasis added.)   The foregoing is quoted as general information from Wikipedia's "Checked baggage" topic, which also states as follows:

> **Passenger-baggage reconciliation**
>
> According to rules of most air transportation authorities, such as the U.S. Federal Aviation Administration and European Union's Joint Aviation Authorities, should passengers flying internationally with checked baggage fail to arrive at the departure gate before the flight is closed, that person's baggage must be retrieved from the aircraft hold before the flight is permitted to take off.   In the United States, this does not apply to domestic flights since all bags are required to go through explosive detection machines (EDS) prior to loading.   Making sure passengers board flights onto which they have checked baggage is called "passenger-baggage reconciliation" and is accomplished automatically through two commercially available systems.   The security presumption of passengers-baggage reconciliation is that terrorists will not kill themselves, and will not board an aircraft if they have caused a bomb to be placed in its hold.

12.   The 2014 book entitled *The Mammoth Book of Air Disasters and Near Misses* by Paul Simpson in its Chapter called "The Lockerbie Bombing" at page 388 states as follows:

On the night of Wednesday 21 December 1988, a bomb exploded inside … the Boeing 747-121 operating the London to New York leg of Pan Am Flight 103 …. The aircraft was flying over the Scottish town of Lockerbie at the time; [of] … the 259 passengers and crew on board, none … survived …. It was one of the worst aviation disasters in history to that point, and certainly the one involving the most Americans, a dubious distinction which was only surpassed by the events of September 11, 2001. …

…

… [T]he court found **"beyond a reasonable doubt that the cause of the disaster was the explosion of an improvised explosive device, that … was contained within a** Toshiba radio cassette player in a brown Samsonite **suitcase** …

…

… A trail seemed to indicate that an **unaccompanied bag** with a bomb could have been … transferred from Frankfurt to Flight 103 …." [At pages 391 and 392, emphasis added.]

13.   The 2014 book by Mr. Simpson also states, in its Chapter entitled "A Canadian Tragedy," at page 374, as follows.

Although the Lockerbie disaster is still the best-known instance of a bomb destroying a plane and killing all aboard, there other examples earlier ….

Air India Flight 182 was the first jumbo jet to be bombed when an explosive package detonated inside a Sanyo radio tuner on 23 June 1985 …. The 747 that formed Flight 182 took off from … Toronto … for a short hop to Montreal. … The security on the flight was apparently very tight ….

Unfortunately, **no one thought to confirm that every passenger who had placed luggage in the hold** for onward transit **… was actually on the plane. A suitcase** containing a bulky Sanyo radio unit **was simply passed through Toronto Airport's systems – … and it didn't cause the portable PDD-4 explosive sniffer,** which staff at Toronto were using in place of a broken X-ray machine**, to give the loud scream that indicated the presence of explosives.**

> There were 307 passengers and twenty-two crew members on
> board the 747 when it took off from Montreal at 0218 GMT,
> with an expected arrival time at London … of 0833 ….
> …
> At 0714:01, **the bomb within the <u>suitcase</u> exploded** ….
> The traffic controllers desperately called the flight, but there was
> no reply.   "One second it was there, and the next it was gone,"
> one of them later told *Time* magazine [at page375].
>
> ….. [E]arly reports suggested that as many as 144 [bodies] were
> recovered, but the final toll was 132 recovered, 197 lost at sea
> [at page 376].   [Emphasis added.]

### <u>United Airline's Undisclosed Checked Baggage Policy</u>

14.   Defendant United Airlines has an undisclosed checked baggage policy that maximizes the "unaccompanied suitcases" on each departing passenger flight to increase the room available for more profitable non-passenger last minute express air cargo on later departing passenger flights.   Under the policy, the goal is to <u>not</u> put the passenger's checked bag on his flight with him, but, essentially, to automatically make every passenger checked bag an "unaccompanied suitcase" on a second earlier departing plane (to the extent possible, in theory, to reach the passenger's ultimate destination before him on the second plane).   The foregoing policy of Defendant United Airlines is hereinafter referred to as its "undisclosed checked baggage policy."

15.   Under the United Airlines undisclosed checked baggage policy that maximizes "unaccompanied suitcases" on its passenger flights, it appears that, a a person could simply look up two of its flights to the same destination three or four hours apart, buy a ticket for the later flight and check in his suitcase early (with the earlier flight).   Then, under its undisclosed checked baggage policy that

maximizes "unaccompanied suitcases," that person's checked bag will <u>not</u> be put on his later flight, but will automatically become an "unaccompanied suitcase" on the earlier departing flight.   After checking in his suitcase, the person simply leaves the airport.   Apparently, under its undisclosed checked baggage policy, by the time it is realized the person did not board his later flight, that earlier departing flight --with his "unaccompanied suitcase" -- has been airborne for well over an hour or more.

16.   Under the normally expected, long standing policy where the passenger's checked bag is placed on his flight with him, if the passenger fails to actually board his flight, the airline should immediately know that his checked bag has now become an "unaccompanied suitcase."   The airline then would have the opportunity to remove the now "unaccompanied suitcase" before the airplane takes off.  (Such removal is apparently required on international flights.)   That opportunity to remove the now "unaccompanied suitcase" has been given up by United Airlines under its undisclosed checked baggage policy that maximizes "unaccompanied suitcases" by automatically putting passenger checked bags on a second, earlier flight.

17.   Defendant United Airlines' introduction of its undisclosed checked baggage policy that maximizes "unaccompanied suitcases" on its passenger flights, was done to enabled it to make added profits from increasing the non-passenger air cargo it carried on its passenger flights -- by filling up the newly created increased space for non-passenger air cargo it created by its introduced undisclosed checked baggage policy that maximizes "unaccompanied suitcases."

18.   By Defendant United Airlines' introduction of its undisclosed checked baggage policy that maximizes "unaccompanied suitcases" it was able to place more non-passenger air cargo on its passenger flights and, thus, add larger air

cargo profits from its passenger flights, to its already huge profits from checked baggage fees and other such ancillary passenger fees -- it had more than $5.7 billion in yearly revenue in 2013 from its checked baggage fees and other such ancillary passenger fees -- the highest of any airline and over twice that of any other airline.

19.  Obviously the undisclosed increase in the amount of "unaccompanied suitcases" on Defendant's passenger airplanes is not in the best interests of the safety of its airline passengers in view of the magnitude of the potential harm -- as "unaccompanied suitcases" have led to the downing of large passenger airplanes killing of all on board, as reviewed above.   (The undisclosed increase in the non-passenger air cargo on its passenger flights enabled by, and resulting from, its undisclosed checked baggage policy that maximizes "unaccompanied suitcases" on its passenger flights, is also not beneficial to passenger safety.)

20.   Increasing the amount of "unaccompanied suitcases" on the passenger flights of United Airlines is an extremely important material fact to its potential passengers, as it jeopardizes the safety of its airline passengers by greatly increasing the risk of safety of those passengers over the normally expected, long standing checked baggage policy where the passenger's bag is placed on his flight to travel with him.   His bag does not become an "unaccompanied suitcases" as it does under the United Airlines undisclosed checked baggage policy that maximizes "unaccompanied suitcases."   Accordingly, United Airlines has a duty to disclose to its potential passengers this extremely important material fact <u>before</u> they and their families fly on its passenger flights.

21.   United Airlines' duty to disclose to its potential passengers its undisclosed checked baggage policy that maximizes "unaccompanied suitcases" on its passenger flights <u>before</u> they and their families fly on its passenger flights, is not

mitigated simply because all checked bags are "supposed" to be properly inspected for explosives by the Transportation Security Administration ("TSA").

22.   No explosive detection system is perfect in real world situations -- as revealed in the Montreal explosive sniffer machine's failure to detect the explosives in the unaccompanied suitcase which resulted in all the 329 people on board the airplane being killed.   Accordingly, if an airline has a checked baggage policy which maximizes the "unaccompanied suitcases" on its passenger flights, it has a duty to disclose that to its passengers before they and their families fly, notwithstanding any explosive detection system.   As United Airlines is well aware, the TSA inspections of checked bags for explosives is very far from perfect and has been determined to be seriously deficient in many ways by the findings of the Office of the Inspector General, as reviewed below.

## Office of Inspector General Findings

23.   The May 6, 2015 (OIG-15-86) report of the U.S. Department of Homeland Security, Office of Inspector General, entitled "*The Transportation Security Administration Does Not Properly Manage Its Airport Screening Equipment Maintenance Program*" states as follows:

> **What We Found**
> The Transportation Security Administration (**TSA**) **is not properly managing the maintenance of its airport screening equipment**.   …   Consequently, **the safety of airline passengers** and aircraft **could be jeopardized**. [at "Highlights" page, emphasis underlined added]
> …
> **Background**
> ...
> We reviewed maintenance data on the following checkpoint passenger screening equipment: Explosive Trace Detection (ETD) machines ….   **We also reviewed maintenance data**

**for** Explosive Detection Systems (EDS) and **ETD checked
baggage screening equipment**.
[At page 1, emphasis underlined added.]

24.   The September 2012 (OIG-12-128) report of the U.S. Department of

Homeland Security, Office of Inspector General, entitled "*TSA Management and*

*Oversight at Honolulu International Airport*" states as follows:

> **Executive Summary**
> …
> Although ignoring security procedures is never justified,
> **Transportation Security Officers** at one location in
> Honolulu International Airport **did not screen all checked
> baggage** as required during the last few months of 2010.  …
>
> Without ensuring that baggage is screened as appropriate,
> **TSA risks the safety of the traveling public by allowing
> unscreened baggage on passenger aircraft**.
> [At page 1, emphasis underlined added.]
> …
> **Conclusion**
> **TSA does not know the extent to which baggage was not
> screened** during 2010 at HNL, **placing the safety of the
> traveling public at risk by allowing unscreened baggage
> on passenger aircraft**.
> [At page 15, emphasis underlined added.]

25.   The June 2, 2015 (Tuesday) article entitled "*TSA failed to detect mock*

*explosives and weapons 95% of the time during airport security tests*" by business

insider.com stated as follows (repeating what was first reported by ABC News, and

then independently reconfirmed by both CNN and Fox News):

> Homeland Security Secretary … said Monday he reassigned the
> acting administrator for the Transportation Security Administration
> after earlier ordering improved security at U.S. airports.
>
> **TSA failed to detect mock explosives** and weapons **in 95 percent
> of tests** carried out by undercover agents.  [Emphasis added.]

26.   The November 4, 2015 (Wednesday) article -- five months later -- entitled

"*Surprise: TSA Hasn't Improved Since Failing 95 Percent of Security Tests*"

reported on the public testimony of the Inspector General the day before:

> According to Homeland Security Inspector General John Roth, a second round of testing in September 2015 shows TSA is still missing major security breaches.
>
> "In September 2015, we completed and distributed our report on our most recent round of covert testing.   The results are classified at the Secret level ….   While I cannot talk about the specifics in this setting I am able to say … **that <u>the</u> <u>test</u> <u>results</u> <u>were</u> <u>disappointing</u> <u>and</u> <u>troubling</u>**."  Roth said during testimony in front of the House Oversight Committee Tuesday.   **"We ran multiple tests at eight different airports of different sizes, including large category X airports across the country, and tested airports using private screeners as part of the Screening Partnership Program.  <u>The</u> <u>results</u> <u>were</u> <u>consistent</u> <u>across</u> <u>every</u> <u>airport</u>**.   Our testing was designed to test checkpoint operations in real world conditions.   … **<u>The</u> <u>failures</u> <u>included</u> <u>failures</u> <u>in</u> <u>the</u> <u>technology</u>, <u>failures</u> <u>in</u> <u>TSA</u> <u>procedures</u>, <u>and</u> <u>human</u> <u>error</u>.  <u>We</u> <u>found</u> <u>layers</u> <u>of</u> <u>security</u> <u>simply</u> <u>missing</u>.  It would be misleading to minimize the rigor of our testing, or to imply that our testing was not an accurate reflection of the effectiveness of the totality of aviation security**."   [Bold emphasis in article, underlined emphasis added.]

## Three Plaintiff Classes

27.   United Airlines has a duty to disclose its "undisclosed checked baggage policy" (see Paragraph 14 supra) that maximizes "unaccompanied suitcases" on its passenger flights to the following three classes:

(a)   To the Class Plaintiffs comprised of all of its millions of passengers who paid consideration to United Airlines to fly on its passenger flights and had a right to know their safety was being jeopardized and unnecessarily placed at

greater risk by United Airlines' undisclosed cheeked baggage policy that maximized the "unaccompanied suitcases" on its passenger flights to make greater profits for United Airlines on higher profit non-passenger last minute express air cargo on its passenger flights;

(b)   To the Class Plaintiffs comprised of its millions of passengers since January 1, 2010 who paid its "checked baggage fee" of $25 (or $23 via the internet) to check their bag on their flight with them, and had a right to know their safety was being jeopardized and unnecessarily placed at greater risk by United Airlines' undisclosed cheeked baggage policy that maximized the "unaccompanied suitcases" on its passenger flights to make greater profits for United Airlines on higher profit non-passenger last minute express air cargo on its passenger flights; and

(c) To the Subclass Plaintiffs comprised of its probably hundreds of thousands of passengers since January 1, 2010 who paid its "checked baggage fee" of $25 (or more) (or $23 via the internet) to check their bag on their flight with them so their checked bag would arrive on their flight with them at their destination but, instead, had their bag delayed (and not available for them to pick up upon their arrival at their destination), because United Airlines had put their checked bag on a second plane to make greater profits for United Airlines by maximizing "unaccompanied suitcases" on its earlier passenger flights because it makes more cargo space available on its later passenger flights for higher profit non-passenger last minute express air cargo on its passenger flights.

28.   According to the United States Department of Transportation, Office of the Assistant Secretary for Research and Technology, Bureau of Transportation Statistics yearly reports entitled "Baggage Fees by Airline [for each year from

2016 to 2010]," Defendant United Airlines collected the following revenue from checked baggage fees in the year indicated below:

| | | |
|---|---|---|
| 2016 | $ 262,464,000 | (first quarter year only) |
| 2015 | $ 672,222,000 | |
| 2014 | $ 651,857,000 | |
| 2013 | $ 624,821,000 | |
| 2012 | $ 705,547,000 | |
| 2011 | $ 276,817,000 | |
| 2010 | $ 313,207,000 | |

The total of the above is $3,506,935,000 and is the checked baggage fees collected by Defendant United Airlines from the Paragraph 27(b) checked baggage fee payors (they are supra referred to as the "Checked Baggage Fee Class") thus far during their class period from January 1, 2010 to the present.

29.   Since 2008, Defendant United Airlines has charged its passengers checked baggage fees for services that were previously included in the price of a ticket.   Defendant United Airlines' checked baggage fees were simply added on and do not reflect any proportional increases in its costs.   Checked baggage fees represent no additional costs to Defendant United Airlines -- checked baggage fees are basically all profit.

30.   Defendant United Airlines has, essentially, made a profit of over $3.5 billion from the checked baggage fees paid to it by the Checked Baggage Fee Class (thus far during their class period thru the first quarter of 2016) by intentionally concealing from them that they were flying on airplanes where "unaccompanied suitcases" were intentionally maximized and, thereby, jeopardizing their safety and that of their families flying with them.

## Declaratory Judgement to Protect Safety

31.   Class Plaintiff intends to vigorously represent the members of the above proposed classes in the fraud claims (and other claims) herein against United Airlines.   However, in addition, Class Plaintiff will seek that the following Declaratory Judgement be entered (prior to any discovery) to protect the safety of all prospective airline passengers in the United States and the public so they have the information they need to make a more informed decision on the level of risk to their safety that they and their families want to take from flying with relatively large amounts of "unaccompanied suitcases" on their passenger flights:

> United Airlines, Inc. has an undisclosed checked baggage policy that maximizes "unaccompanied suitcases" on its passenger flights to make more cargo space available for higher profit non-passenger last minute express air cargo on its passenger flights -- and that passenger safety is jeopardized and unnecessarily placed at greater risk by its undisclosed checked baggage policy that maximizes "unaccompanied suitcases" on its passenger flights.

32.   Note: The Defendant's aforesaid undisclosed checked baggage policy was basically admitted by its own Honolulu Supervisor in charge and was, later, never denied by Defendant's Chairman of the Board, President and Chief Executive Officer after he received a certified letter sent to him basically repeating said policy; that letter was duly acknowledged as received.  (See infra Paragraphs 45-50 and 59-61, respectively.)  Further, maximizing "unaccompanied suitcases" on passenger flights is obviously not in the best interests of the safety of airline passengers, as "unaccompanied suitcases" have led to the death of all on board large passenger airplanes.  (See Paragraphs 10 to 13 supra.)

## IV.   FACTUAL ALLEGATIONS

### Arrival in Honolulu –

### No Aloha from United Airlines for Its "Checked Baggage Fee" Customers

33.   Class Plaintiff arrived in Honolulu on July 22, 2015 with two baggage claim checks from Defendant United Airlines for two checked bags, copies of which are attached hereto as Exhibit "A."

34.   To receive the two baggage claim checks, Class Plaintiff had paid Defendant's $25 "checked baggage fee" for each of the two checked bags with Class Plaintiff's MasterCard at check-in at Seattle earlier that day.   Class Plaintiff received a "Baggage Receipt" from Defendant with "Issue Date: 22 JUL 2015" for each of her two $25 payments which Class Plaintiff needed to present "at bag check" to receive the two baggage claim checks attached as Exhibit "A."

35.   Class Plaintiff's arrival in Honolulu was the concluding leg of Class Plaintiff's one-way ticket with Defendant United Airlines departing from Seattle earlier that day on United flight # UA1725 to San Francisco, with a change of plane in San Francisco to United flight # UA1122 to Honolulu.   Class Plaintiff's two baggage claim checks both stated that the checked bags would be carried on the same said two flight numbers that Class Plaintiff was flying on (bold emphasis supplied) on July 22, 2015:

```
…                                    …
REC LOC-NMOFRB                        REC LOC-NM2EK9
UA1122 HNL                           UA1122 HNL
      HONOLULU      HI                     HONOLULU      HI
UA1725 SFO                           UA 1725 SFO
              SEA/LC                              SEA/LC
            22JUL15 /0036                       22JUL15 /O332
…                                    …
```

16

36.   Class Plaintiff's one-way ticket with Defendant United Airlines was for travel on July 22, 2015 (with United Confirmation Number "NMOFRB") for the following flights and times:

FLIGHT INFORMATION

| Day, Date | Flight | Departure City and Time | Arrival City and Time |
|---|---|---|---|
| Wed. 22JUL 15 | **UA1725** | SEATTLE, WA (SEA) **5:20 AM** | SAN FRANCISCO, CA (SFO) **7:37 AM** |
| Wed. 22JUL 15 | **UA1122** | SAN FRANCISCO, CA (SFO) **10:55 AM** | HONOLULU, HI (HNL) **1:19 PM** |

There was a three hour and eighteen-minute wait in San Francisco (7:37 AM to 10:55 AM).   This provided plenty of time to transfer Class Plaintiff's two checked bags to Class Plaintiff's UA1122 flight departing at 10:55 AM for Honolulu.

37.   Class Plaintiff was flying from Seattle to Honolulu on July 22, 2015 on Defendant United Airlines with Plaintiff II, who is her husband.   Plaintiff II's flights and times were identical to those of Class Plaintiff's as set forth in the preceding Paragraph 36, (except his United Confirmation number was "NM2EK9").

38.   Class Plaintiff's two flights from Seattle to Honolulu, via San Francisco, both departed and arrived as scheduled, as set forth in Paragraph 36 above, except that the San Francisco to Honolulu flight UA1122 arrived early.   It arrived probably a little before 1 p.m.  (The pilot announced prior to arrival in Honolulu that, because of tail winds, the flight would arrive early; the best recollection is he said a number between 25 and 29 minutes early.)

39.  Class Plaintiff and Plaintiff II were waiting at Defendant's Honolulu

baggage pickup carousel number H-5 (which is the first carousel when arriving passengers enter the airport's large baggage pick up area for baggage carousels H-5 to H-1, G-5 to G-1 and F-1 and F-2) when the bags from their Flight #UA1122 from San Francisco to Honolulu came onto Defendant's rotating baggage carousel H-5.  After waiting for some time and not seeing either of the two checked bags, a female United Airlines agent came up to Plaintiff II and said there were no other bags from that flight coming.   Plaintiff II went with this first Honolulu agent of Defendant to a computer screen nearby, gave the first agent Class Plaintiff's two baggage claim checks and other information requested. Then the first Honolulu agent looked up information on her computer and said the two checked bags were coming on a second plane, that they would arrive at the same baggage carousel and that it would be about a two hour extra wait to get the two checked bags.

40.   Plaintiff II then complained to the first Honolulu agent: (1) that he had never had a checked bag not arrive with him in Honolulu in the over 50 years he had been living in Hawaii and countless flights into Honolulu, and (2) that he suspected foul play from certain Seattle United Airline agents who checked in the two checked bags in Seattle earlier that day.   In response to Plaintiff II's complaints, the first Honolulu agent said a lost baggage report could be filed in Defendant's baggage office behind the carousel and that that office might have more information.  She was polite, but did not say she was sorry.  She acted like this was just business as usual.

41.   Plaintiff II and Class Plaintiff went to the baggage office and got in line to talk to someone else.  When their turn came there was a female agent behind the Defendant's counter.   Plaintiff II stated his two complaints (1) and (2) above to the Defendant's agent behind the counter.  This second Honolulu agent asked to see

the two baggage claim checks and was given them.  The agent also asked

for other information and her questions were answered.   The second Honolulu

agent then also looked at her computer and said the same thing as the first

Honolulu agent: that the two bags were coming on a second plane, that they would

arrive at the same baggage carousel and that it would be about a two-hour extra

wait to get the two checked bags.  She did not respond to Plaintiff II's two

complaints, except to say a written lost bag report regarding the two checked bags

could be filed with her.   Class Plaintiff and Plaintiff II declined to file a written

lost bag report and said they would simply wait by the Defendant's baggage

carousel for the second plane to arrive as they needed the two checked bags.  The

second Honolulu agent was polite, but also did not say she was sorry.  She also

acted like this was just business as usual.

   42.   Class Plaintiff and Plaintiff II left the Defendant's baggage office trying to

think there was probably just an honest mistake.  They went to wait where the only

seats in the area were located, on the Diamond Head side of the Defendant's

rotating baggage carousel H-5.   There were six seats against the wall next to the

entrance to men's restroom.

   43.   After a few minutes a man came up to Class Plaintiff and said he

had been on the same flight from San Francisco and was waiting for his bags that

had not arrived with him.  He said he needed his medicine that was in his bags and

was not leaving the airport without his bags with his medicine.  He said he had

started his flight in Arizona earlier that day and changed planes in San Francisco

for Honolulu.  Because of the man's related experience, and because Plaintiff II

said he had been regularly flying into Honolulu for decades and had never seen

people treated this way, Class Plaintiff asked Plaintiff II to go back and file a

written lost bag report.   Class Plaintiff continued waiting in the seats with all their

19

carry-on items.    When Plaintiff II returned, he related to Class Plaintiff what is stated below in Paragraphs 44 to 55.

44.   Plaintiff II went back to the second Honolulu agent at Defendant's baggage office, told her that Class Plaintiff and he had reconsidered filing and filed a lost bag report.  Plaintiff II asked the second Honolulu agent if Class Plaintiff and he could wait for the two delayed checked bags in United's lounge instead of the seats by the men's restroom entrance. The second Honolulu agent said she would have to ask her supervisor.  Plaintiff II again stated his complaints (1) and (2) above to the agent for the second time.  She had no specific response to the complaints, but was polite.  Still no one had said they were sorry.  It was as if this was business as usual for United Airlines in Honolulu and United Airlines did not care about its passengers.   It was only then that Plaintiff II demanded to speak to the Supervisor in charge.

## Honolulu Supervisor in Charge

45.   Plaintiff II was referred to a man who represented he was the Defendant's Supervisor in charge who was standing with baggage carousel H-5 to his right and baggage carousel H-4 to his left.   [To his left where nine large baggage carousels similar to H-5, those nine are numbered H-4 to H-1 and G-5 to G-1; there is a "United Baggage Service" office near baggage carousel H-4, a "Delta Baggage Service" office near baggage carousel H-1, and an "American Baggage Service" office near baggage carousel G-1.]   Plaintiff II stated his complaints (1) and (2) above to the Supervisor in charge and repeatedly emphasized his suspicions that the Seattle check-in agents had intentionally held the two checked bags and put them on a later flight in retaliation or Class Plaintiff's complaints in Seattle about four of the five Seattle agents, and especially about the fourth Seattle agent who

was apparently a first class check-in agent.  Plaintiff II related that the fourth Seattle agent, who had no customers, had yelled at Class Plaintiff, had behaved rudely and unprofessionally to Class Plaintiff, had refused to help Class Plaintiff check in the two checked bags so Class Plaintiff could rush to the gate to try to get seats together with her husband for the trip, and had walked away from Class Plaintiff leaving Class Plaintiff alone with no one to check in Class Plaintiff's two bags.

46.   Defendant's Honolulu Supervisor in charge was given Class Plaintiff's two baggage claim checks and he looked them up on his computer system and, after a good deal of time, said that the two checked bags had been properly placed on the flight # UA1725 of Class Plaintiff and Plaintiff II from Seattle to San Francisco. However, he said that in San Francisco the two checked bags were not placed on their flight # UA1122 to Honolulu.  He said that the two checked bags had, instead, been placed on a second plane to Honolulu at the San Francisco Airport.

47.   Plaintiff II then said that he thought that the Seattle agents had intentionally routed Class Plaintiff's the two checked bags to the second plane in San Francisco in retaliation for Class Plaintiff's complaints in Seattle about the four Seattle agents for their treatment of Class Plaintiff at the Seattle baggage check-in.   Plaintiff II said he wanted to file a formal written complaint with the Honolulu Supervisor in charge against the Seattle agents for intentionally misrouting Class Plaintiff's two checked bags to a second plane in retaliation for Class Plaintiff's complaints in Seattle against the four Seattle agents.

48.   The Honolulu Supervisor in charge defended the Seattle agents saying it was not the Seattle agents' fault and that the Seattle agents did not arrange for Class Plaintiff's two checked bags not to be placed on Class Plaintiff's flight # UA1122 from San Francisco to Honolulu, but, instead, on a second plane.

49.   Plaintiff II responded by strongly disagreeing with the Honolulu Supervisor in charge saying that it must have been the Seattle agents, as there could be no other reason not to place Class Plaintiff's two checked bags on her flight with her from San Francisco to Honolulu.  Plaintiff II told the Honolulu Supervisor that there had been plenty of time to place the two checked bags on Class Plaintiff's flight # UA1122, as Class Plaintiff's flight into San Francisco from Seattle arrived as scheduled [at 7:37 AM], that the scheduled three hour plus layover occurred as scheduled, and that there had been plenty of time in that three plus hours of the layover for Defendant to transfer the two checked bags to Class Plaintiff's flight # UA1122 to Honolulu, which departed as scheduled [at 10:55 AM].  Plaintiff II again stated he wanted to file a formal written complaint with the Honolulu Supervisor in charge against the Seattle agents for intentionally misrouting Class Plaintiff's two checked bags to a second plane in retaliation for Class Plaintiff's complaints against the agents in Seattle.

## United Airlines "Undisclosed Checked Baggage Policy" Finally Revealed

50.   In response to Plaintiff II's continued persistent questioning and allegations that the Seattle agents intentionally rerouted the two checked bags to a second plane in San Francisco to retaliate against Class Plaintiff for Class Plaintiff's complaints in Seattle against the Seattle agents, the Defendant's Honolulu Supervisor in charge continued to defend the Seattle agents saying that the Seattle agents were not to blame.  However, he then elaborated further for the first time, basically saying that:

(a)   United Airlines has a checked baggage policy not to place passenger checked bags on their flight with them, but, instead, to place their bags on the earliest next available flight to their destination that has unused cargo space; and

(b)   United Airlines has the policy because it makes more cargo space available on their flight for non-passenger express last minute air cargo at the higher rates charged for that cargo.

51.   The Supervisor in charge finally admitted it was the United Airlines checked baggage policy that automatically put Class Plaintiff's two checked bags on a second plane at San Francisco airport that was scheduled to depart for Honolulu earlier than Class Plaintiff's flight # UA1122 [scheduled to depart at 10:55 AM].  The Supervisor was adamant that the Seattle agents were not responsible for putting Class Plaintiff's bags on a second plane.  He said that the second plane was United flight #663 which was scheduled to depart at 9:05 AM from San Francisco to Honolulu. The Supervisor said that the second plane did not depart San Francisco as scheduled and that was why the two checked bags were delayed in arriving in Honolulu.

52.   Plaintiff II said he was shocked by such a checked baggage policy and could not believe United Airlines actually had a policy not to place the passenger's checked bag on the passenger's flight with him, but, instead, on a second plane, all so it could make more money on non-passenger air cargo. The Honolulu Supervisor in charge responded stating the policy was "not illegal," and continued saying "it's not illegal" many times as Plaintiff II expressed his disapproval of the policy.  He also said it is "legal" to send the two bags/items "on the earlier flight" rather than on [Class Plaintiff's and Plaintiff II's] flight.

53.   Plaintiff II then asked the Honolulu Supervisor in charge what happens under United's policy to put passenger checked bags on an earlier flight when the passenger's bags arrive before the passenger does at his final destination?   The Supervisor in charge responded saying, basically, that their checked bags on the earlier flight are deposited onto the rotating baggage carousel along with all the

other checked bags from the earlier flight, that they rotate around until it appears

all passengers waiting for bags have left and that, then, a United agent collects any

bags still on the rotating carousel and sets them next to the carousel -- and that

their checked bags will, thereafter, be put back on the baggage carousel when the

passenger who checked his bags actually arrives on his flight, to rotate around with

all the bags that just arrived on the passenger's flight.

54.  Plaintiff II then strongly objected to the Supervisor in charge saying that

United Airlines should be putting passenger checked bags on the flight

with the passenger so their bags arrive with the passenger -- not on earlier flights,

where United just deposits their checked bags onto the public rotating carousel

knowing the passenger is not there to make sure his checked bag is not stolen.

The Supervisor in charge responded to Plaintiff II's strong objections by saying

again that "it's not illegal" and said "look" –  pointing to his left at a group of

about 10 people without any apparent checked type bags near carousel H-1 talking

to what appeared to be an agent for another airline – "see, everyone does it."

Plaintiff II repeated that [Class Plaintiff's] two checked bags should have been put

on the flight with [Class Plaintiff], not on an earlier flight.    The Supervisor in

charge responded by repeating "everyone does it" and gesturing generally to his

left at the baggage carousels going into the distance [baggage carousels H-4 to H-1

and G-5 to G-1; there is a "Delta Baggage Service" office near H-1 and an

"American Baggage Service" office near G-1]. Plaintiff II said something like it

was still wrong -- to which the Supervisor in charge again said "everyone one does

it."  Plaintiff II was quiet and turned to walk away.

55.  Defendant's Honolulu Supervisor in charge was polite at all times.   As

Plaintiff II started to walk away, the Supervisor said because United would save

the money to deliver the two delayed checked bags because [Class Plaintiff and

Plaintiff II] were going to wait at the airport for the two checked bags to arrive, that he could issue a free $50 certificate for travel.  Plaintiff II said okay if it is free of any obligations.  When the Supervisor handed Plaintiff II a written waiver of all claims form to get it, Plaintiff II immediately refused.   Plaintiff II left to return to Class Plaintiff in the seats by the bathrooms on the Diamond Head side of Defendant's baggage carousel H-5.

## After Speaking to Honolulu Supervisor in Charge and Agents

56.  Plaintiff II retuned to Class Plaintiff and related to Class Plaintiff what is stated in Paragraphs 44 to 55 above.   Class Plaintiff and Plaintiff II sat and waited in the seats by the bathrooms for the two delayed checked bags to arrive. Defendant's agents never responded to the request to wait in Defendant's lounge. Defendant's agents did not check on Class Plaintiff or Plaintiff II, or contact them in any way.   None of Defendant's Honolulu agents ever said they were sorry.

57.   After waiting a total extra time of about a little over two hours for the two delayed checked bags, they arrived on the Defendant's rotating baggage carousel with all the bags on the second flight.  Plaintiff II removed the two delayed checked bags from the Defendant's rotating baggage carousel.  No one was asking for baggage claim checks at the Defendant's baggage carousel.  No one asked to see Class Plaintiff's two baggage claim checks for the two delayed checked bags removed from Defendant's rotating baggage carousel.  Class Plaintiff and Plaintiff II left the Defendant's rotating baggage carousel and walked toward the exit doors of the airport's baggage claim area with the two delayed checked bags.

58.   Class Plaintiff and Plaintiff II saw no one asking for baggage claim checks by the exit doors and no one asked to see any baggage claim checks for the two delayed checked bags.  Class Plaintiff and Plaintiff II exited the baggage claim

area doors and walked outside toward the road.  No one had ever asked to see

Class Plaintiff's two baggage claim checks for the two delayed checked bags.

### After Leaving Honolulu Airport – Letter to Defendant

59.  A "Notice of Class Action Lawsuit" letter was sent to Defendant United

Airlines by "CERTIFIED MAIL RETURN RECEIPT REQUESTED" dated

August 28, 2015.   The letter gave notice that Class Plaintiff and Plaintiff II

intended to file a Class Action against United Airlines "for United's fraud in

failing to disclose to United passengers" that United Airlines "has a policy not to

place their passenger checked bags on their flight with them, but, instead, to place

their bags on the next earliest available United flight to their destination that has

unused cargo space."   The letter said United had the undisclosed policy to make

"more cargo room space available on their flight for non-passenger express air

cargo at very high paying rates" and "to make excessive profits at the expense of

its passengers."

60.  The August 28, 2015 letter was sent to "Jeffery A. Smisek, Chairman

of the Board, President and Chief Executive Officer, United Airlines, Inc., 233 S.

Wacker Drive, Chicago, IL 60606."   The letter was duly acknowledged as

received by Domestic Return Receipt "Article Number 7014 2120 0000 2996

0285" dated September 7, 2015.

61.  No response was ever received to the August 28, 2015 letter to Defendant.

No denial by Defendant has ever been made, in writing or otherwise, that

Defendant does not have the undisclosed checked baggage policy set forth in the

letter.

## Class Plaintiff's Payments to Defendant for Passenger Travel

62.   Class Plaintiff paid Defendant a total of $1,232.60 with Class Plaintiff's MasterCard for the two one-way tickets for passenger travel on July 22, 2015 from Seattle to Honolulu (with a change of planes in San Francisco) referenced in Paragraphs 36, 37 and 38 herein.  (This does not include Class Plaintiff's payment of two $25 checked baggage fees on July 22, 2015 to obtain the "two baggage claim checks from Defendant" attached hereto as Exhibit "A" and referenced in Paragraphs 33, 34 and 35 herein.)

63.   The $1,232.60 total paid by Class Plaintiff to Defendant with her MasterCard for the two one-way tickets for passenger travel on July 22, 2015 from Seattle to Honolulu (with a change of planes in San Francisco) breaks down as follows:

(a) On July 12, 2015 over the telephone Class Plaintiff paid two $301 payments to get two one-way tickets from Seattle to Honolulu with a change of planes in San Francisco (this was the amount Defendant said was still needed to get the said two tickets after all applicable mileage credits were used up and Defendant required that the two $301 payments be applied to purchase more mileage credits that Class Plaintiff would have to pay a $75 fee to redeem); and also paid two additional $75 redemption fees to get the said two tickets; and also paid two more $11.20 fees.

(b)  On July 20, 2015 over the telephone Class Plaintiff changed the departure time on the two one-way tickets for passenger travel slightly to the final travel flights and times set forth in Paragraph 36 supra and, as a result, Defendant demanded payment of, and Class Plaintiff paid, two $25 reservation fees and two more $75 redemption fees, and also paid two $5.60 fees.

(c)   On July 22, 2015 at the Defendant's Seattle departure gate, Class Plaintiff requested seats together with Plaintiff II in economy, was told by the gate agent that seats were available together in economy for both the flight from Seattle to San Francisco and the flight from San Francisco to Honolulu, but that Class Plaintiff would have to pay extra for them to sit together; Class Plaintiff paid the extra payments demanded by Defendant of $55 and $66 for her seats, respectively, and for the seat next to her of $57 and $69, respectively, for Plaintiff II. ($301+$301+$75+$75+$11.20+$11.20 on July 12, 2015 + $25+$25+$75+$75+ $5.60+5.60 on July 20,2015 + $55+$66+$57+$69 on July 22, 2015= $1,232.60)

64.    Class Plaintiff paid Defendant a total of $613.80 with Class Plaintiff's MasterCard for Class Plaintiff's one-way ticket for passenger travel on July 22, 2015 from Seattle to Honolulu (with a change of planes in San Francisco) referenced in Paragraphs 36, 37 and 38 herein.

65.    Class Plaintiff paid Defendant a total of $618.80 with Class Plaintiff's MasterCard for Plaintiff II's one-way ticket for passenger travel on July 22, 2015 from Seattle to Honolulu (with a change of planes in San Francisco) referenced in Paragraphs 36, 37 and 38 herein.

## Seattle Baggage Check In

66.    Class Plaintiff was not given assigned seats together with Plaintiff II for their passenger travel on July 22, 2015 with Defendant.   Defendant's telephone agent had told Class Plaintiff to ask for seats together when Class Plaintiff checked in for her flight # UA 1725 at the Seattle airport.

67. Class Plaintiff and Plaintiff II arrived early on the morning of July 22, 2015 at Defendant's Seattle airport departure check-in counter before it opened to try to

28

get seats together for their trip to Honolulu departing at 5:20 a.m. with flight # UA 1725.   Class Plaintiff was standing in front of Defendant's first check-in station for economy (which was closest to the door behind the check-in counter where Defendant's check-in agents entered the counter area).   Class Plaintiff had all her check-in information on the top of the first check-in station on the economy check-in counter.   Finally, three of Defendant's Seattle check-in agents came through the door to begin checking in passengers and their bags.   Class Plaintiff asked Defendant's three check-in agents for help in getting assigned seats together for herself and her husband to sit together to Honolulu. Class Plaintiff was told she had to ask the boarding agent at the gate for assigned seats together.    All three Seattle agents then walked away to Class Plaintiff's right down the long economy check-in counter with many other check-in stations.   Class Plaintiff was left alone with no one to check in her two bags so she could go to the gate to try to get seats together.

68.   Class Plaintiff was left standing in front of the first check-in station for economy with her travel information on top of the first check-in station and her two bags to be checked in on the weigh-in scale.

69.   Class Plaintiff had done all she could by herself to check in at the automated first check-in station and only needed an agent to check in her two bags and give her two baggage claim checks.   (Class Plaintiff had used her MasterCard credit card in the automated machine at the first check-in station to pay the $25 required "checked baggage fee" for each of the two bags to be checked in – see Paragraph 34 herein.)

70.   Class Plaintiff was standing directly in front of the first check-in station, with her two bags to be checked in on the weigh-in scale.   Plaintiff II was standing behind Class Plaintiff and saw a fourth agent at the non-economy/first class check-

in counter station about 10 to 15 feet to Class Plaintiff's left.  The fourth check-in
agent/first class agent had no customers and was alone, so Plaintiff II objected
to the fourth agent that Class Plaintiff needed help and asked the fourth agent to
come help the Class Plaintiff.  The fourth agent refused to help stating "coach is
not my section" and then yelled down the long counter to Class Plaintiff's right
toward the three original agents for someone to come back to the first economy
check-in station to check in bags.   No one came.

71.  The fourth check-in agent, thereafter, came directly over to the Class
Plaintiff at the first check-in station for economy and loudly yelled directly at Class
Plaintiff.  The fourth agent yelled at Class Plaintiff very loudly so everyone around
could hear.   This action by the fourth Seattle check-in agent in a crowded public
place was embarrassing to Class Plaintiff.

72.  Class Plaintiff basically told the fourth Seattle check-in agent that she and
her husband had no assigned seats together and needed to get to the gate to get
seats together for the long day of travel to Honolulu ahead of them on two different
flights.   Class Plaintiff asked the fourth agent for help to check in the two bags so
Class Plaintiff could get over to the gate to try to get assigned seats together to
Honolulu, before all the seats together were gone.   The fourth Seattle check-in
agent refused Class Plaintiff's requests for help.

73.  The fourth Seattle check-in agent and Class Plaintiff then got into a verbal
exchange which Class Plaintiff regarded as very rude and unprofessional on the
part of the fourth Seattle check-in agent.

74.  The fourth Seattle check-in agent made it clear to Class Plaintiff that the
agent was not going to help Class Plaintiff in any way to check in Class Plaintiff's
two bags so Class Plaintiff could get to the gate to try to get seats together.   The
fourth agent walked away from Class Plaintiff back to the non-economy/first class

check-in station about 10 to 15 feet to the left of Class Plaintiff.   (There were still no customers at that station.)   Class Plaintiff was left standing alone at the first check-in station for economy, with all Class Plaintiff's travel information on top of the first check-in station ready for baggage check in, and with Class Plaintiff's two bags to be checked in on the weigh-in scale ready to be checked in.

75.   None of the original three agents ever came back.   Finally, a fifth Seattle check-in agent, who was a tall male agent, came out of the door behind the departure check-in counter.   Class Plaintiff complained to the fifth Seattle agent about the actions of the fourth Seattle check-in agent (who was standing about 10 to 15 feet away), and also about the first three agents.

76.   The fifth Seattle check-in agent weighed Class Plaintiff's two bags and placed bag tags on Class Plaintiffs' two bags and, apparently, checked them in officially.   He placed Class Plaintiff's two checked bags behind Defendant's check-in counter.   The fifth Seattle check-in agent then handed Class Plaintiff the two baggage claim checks referred to in Paragraph 35 herein (and attached as Exhibit "A").   The fifth Seattle check-in agent did not apologize for the fourth Seattle check-in agent's actions, or for the first three Seattle check-in agents.   The fifth Seattle check-in agent was not overtly impolite.

77.   Class Plaintiff and Plaintiff II then turned around to rush off toward the departure gate to try to get seats together to Honolulu.   They never saw the fifth Seattle check-in agent do anything with Class Plaintiff's two checked bags after the fifth agent placed them behind Defendant's check-in counter.   They did not see the fifth Seattle check-in agent place Class Plaintiff's two checked bags on the moving baggage conveyor behind the fifth agent.   (When they turned around to leave, the fourth Seattle check-in agent was standing about 10 to 15 feet away from Class Plaintiff's two checked bags on the floor behind Defendant's check-in

counter.)

78.   After Class Plaintiff turned around to rush off to the departure gate, Class Plaintiff went immediately and directly to the gate with Plaintiff II.   (Class Plaintiff spoke with the Defendant's Seattle gate agent at the departure gate for flight # UA 1725 and Class Plaintiff had to make four extra payments on her MasterCard to get seats together for the travel to Honolulu, as set forth in Paragraph 63(c) supra.)

## V.   CLASS ALLEGATIONS

79.   Class Plaintiff brings this action on behalf of herself and as a class action, pursuant under Rule 23(a), 23(b)(1)(A), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.  Class Plaintiff seeks to certify a class action on behalf of the following proposed class:

> All persons who paid United Airlines consideration for a ticket on one of its passenger flights, and who flew on one of its passenger flights, when it had its undisclosed checked baggage policy that maximized the "unaccompanied suitcases" on its passenger flights (hereinafter called the "Passenger Class").

The proposed class period for the Passenger Class is presently set, subject to revision based on information learned through discovery, from January 1, 2010 to the present (hereinafter called the "Passenger Class Period").

80.   In addition, Class Plaintiff seeks to certify a class action on behalf of the following proposed class (and also certify it under federal antitrust laws):

> All persons who paid United Airlines a checked baggage fee (in addition to consideration for a ticket) when they flew on one of its passenger flights, when it had its undisclosed checked baggage policy that maximized the "unaccompanied suitcases" on its passenger flights (hereinafter called the "Checked Baggage Fee Class").

The proposed class period for the Checked Baggage Fee Class is presently set, subject to revision based on information learned through discovery, from January 1, 2010 to the present (hereinafter called the "Checked Baggage Fee Class Period").

81.   In further addition, Class Plaintiff seeks to certify a class action on behalf of the following proposed subclass:

> All persons who paid United Airlines a checked baggage fee
> (in addition to consideration for a ticket) when they flew on
> one of its passenger flights, when it had its undisclosed
> checked baggage policy that maximized the "unaccompanied
> suitcases" on its passenger flights, and had their checked bag
> delayed at their ultimate destination because their bag was
> placed on a second earlier departing plane than their passenger
> flight because of the undisclosed checked baggage policy
> (hereinafter called the "Checked Baggage Fee with Delayed Bags
> Subclass.")

The proposed class period for the Checked Baggage Fee with Delayed Bags

Subclass is presently set, subject to revision based on information learned through

discovery, from January 1, 2010 to the present (hereinafter called the "Checked

Baggage Fee with Delayed Bags Subclass Period").

82.   The proposed "Passenger Class," the "Checked Baggage Fee Class," and

the "Checked Baggage Fee with Delayed Bags Subclass" are all hereafter jointly

referred to as the "Classes."

83.   Excluded from the Classes are employees, affiliates and subsidiaries of

Defendant; all persons who make a timely election to be excluded from the

Classes; governmental entities; and the Honorable Judge to whom this case is

assigned and his or her immediate family.  Class Plaintiff reserves the right to

revise the definition of the Classes and the respective Periods of the Classes based

on information learned through discovery.

84.   Class certification of Class Plaintiff's claims is appropriate because Class

Plaintiff can prove the elements of her claims on a Class-wide basis using the same

evidence as would be used to prove those elements in individual actions alleging

the same claim.

85.   This action has been brought and may be properly maintained on behalf

of the proposed Classes herein under Federal Rule of Civil Procedure 23.

86. Numerosity (Rule 23(a)(1)): The members of the Classes are so numerous that individual joinder of all members of the Classes is impracticable. Class Plaintiff is informed and believes that there are not less than 100 members of each of the Classes, but the precise number of the Class members is unknown the Class Plaintiff, but may be ascertained from Defendant' books and records. Class members may be notified of the pendency of this action by recognized Court approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and published notice. (Rule 23(c)(2)(A) states: "For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class.")

87. Commonality and Predominance (Rule 23(a)(2)): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a) Whether Defendant had the "undisclosed checked baggage policy" as alleged herein;

b) Whether Defendant had a duty to disclose its "undisclosed checked baggage policy" to its passengers as alleged herein;

c) Whether Defendant's "undisclosed checked baggage policy" that maximizes "unaccompanied suitcases" on its passenger flights jeopardizes the safety of its passengers and increases the risk of safety to its passengers;

d) Whether Defendant engaged in the conduct alleged herein;

e) Whether Class Plaintiff and the other members of the Classes are entitled to restitution or to declaratory or relief; and

f) Whether Class Plaintiff and the other members of the Classes are entitled to damages and other monetary relief, including treble damages and punitive

damages.

88.   Typicality (Rule 23(a)(3)):   Class Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, all members of the Classes were comparably injured through Defendant's wrongful conduct as described herein.

89.   Adequacy (Rule 23(a)(4)):   Class Plaintiff is an adequate representative of the members of the Classes because her interests do not conflict with the interests of the other members of the Classes she seeks to represent.   Class Plaintiff has also retained counsel competent and experienced in airline fraud litigation in federal court, and Class Plaintiff intends to prosecute this action vigorously.   The interests of the members of the Classes will be fairly and adequately protected by Class Plaintiff and her counsel.

90.   Inconsistent or Varying Adjudications (Rule 23(b)(1)(A)):   The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendant.

91.   Declaratory and Injunctive Relief (Rule 23(b)(2)):   Defendant has acted or refused to act on grounds generally applicable to Class Plaintiff and the other members of the Classes, thereby making appropriate final declaratory and/or injunctive relief, with respect to the Classes as a whole.

92.   Superiority (Rule 23(b)(3)):   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.   The damages or other financial detriment suffered by Class Plaintiff and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against

Defendant, so it would be impracticable for the members of the Classes to individually seek redress for Defendant's wrongful conduct.   Even if members of the Classes could afford individual litigation, individualized litigation creates a potential for inconsistent or contradictory judgements, and increases the delay and expense to all parties and the court system.   By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.   FIRST CAUSE OF ACTION – DECLARATORY JUDGEMENT

93.   Class Plaintiff realleges and incorporates by reference all the preceding paragraphs and allegations as if fully set forth herein.

94.   This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, and for further necessary and proper relief pursuant to 28 U.S.C. § 2202.

95.   Class Plaintiff brings this claim as an individual and as Class Plaintiff on behalf of the members of the Passenger Class and for the protection of prospective airline passengers and the public.

96.   Class Plaintiff requests that the following Declaratory Judgement be entered (prior to any discovery) to protect the safety of all prospective airline passengers in the United States so they have the information they need to make a more informed decision on the level of risk they and their families want to take from flying with relatively large amounts of "unaccompanied suitcases" on their passenger flights:

> United Airlines, Inc. has an undisclosed checked baggage policy that maximizes "unaccompanied suitcases" on its passenger flights to make more cargo space available for higher profit non-passenger last minute express air cargo

on its passenger flights -- and that passenger safety is
jeopardized and unnecessarily placed at greater risk by
its undisclosed checked baggage policy that maximizes
"unaccompanied suitcases" on its passenger flights.

97.   The Declaratory Judgement is warranted without any discovery as
the Defendant's aforesaid undisclosed checked baggage policy was basically
admitted by its own Supervisor in charge and was, later, never denied by
Defendant's Chairman of the Board, President and Chief Executive Officer after he
received a certified letter sent to him basically repeating said policy; that letter was
duly acknowledged as received.  (See supra Paragraphs 45-50 and 59-61,
respectively.)  Further, maximizing "unaccompanied suitcases" on passenger
flights is obviously not in the best interests of the safety of airline passengers, as
"unaccompanied suitcases" have led to the death of all on board large passenger
airplanes.  (See Paragraph 10-13 supra.)

98.   There is a real, present and genuine dispute between Class Plaintiff and
the Defendant as to whether Defendant has, in fact, the said policy, to the extent
that Defendant has never responded to the aforesaid certified letter in any way.
Accordingly, there is uncertainty as to whether Defendant does, in fact, have the
said undisclosed checked baggage policy.   There is also a real, present and
genuine dispute between Class Plaintiff and Defendant as to whether Defendant
admits the obvious safety risks set forth in the Declaratory Judgement from
Defendant's undisclosed checked baggage policy based on Defendant's
unresponsiveness to the aforesaid certified letter and behavior alleged herein.

99.   Class Plaintiff and the members of the Passenger Class (and all
prospective airline passengers in the United States and the public) are entitled,
under all the circumstances of this matter, to the aforesaid declaratory ruling.

## VII.   SECOND CAUSE OF ACTION -- INTENTIONAL FRAUDULENT MISREPRESENTATION

100.   Class Plaintiff realleges and incorporates by reference all of the above and foregoing allegations and paragraphs as if fully set forth herein.

101.   Class Plaintiff brings this claim for relief as an individual and as Class Plaintiff on behalf of the members of three proposed classes: the Passenger Class, the Checked Baggage Fee Class and the Checked Baggage Fee with Delayed Bags Subclass.

### Definitions

102.   The proposed "Passenger Class," the proposed "Checked Baggage Fee Class," and the proposed "Checked Baggage Fee with Delayed Bags Subclass" are hereinafter all three jointly referred to as the "Classes."

103.   The proposed "Checked Baggage Fee Class" and the proposed "Checked Baggage Fee with Delayed Bags Subclass" are hereinafter jointly both referred to as the "Checked Baggage Fee Classes."

104.   Defendant United Airlines has an undisclosed checked baggage policy that maximizes the "unaccompanied suitcases" on each departing passenger flight to increase the room available for more profitable non-passenger last minute express air cargo on later departing passenger flights.   Under the policy, the goal is to <u>not</u> put the passenger's checked bag on his flight with him, but, essentially, to automatically make every passenger checked bag an "unaccompanied suitcase" on a second earlier departing plane (to the extent possible, in theory, to reach the passenger's ultimate destination before him on the second plane).   The foregoing policy of the Defendant is hereinafter referred to as the "undisclosed checked baggage policy" (see already stated in Paragraph 14 supra).

**Allegations**

105.   During the respective proposed class periods of the three Classes, Defendant United Airlines had its "undisclosed checked baggage policy."

106.   During the respective proposed class periods of the two Checked Baggage Fee Classes, Defendant United Airlines had its "undisclosed checked baggage policy."

107.   Defendant United Airlines had a duty to disclose to the Class Plaintiff and the members of the Passenger Class the Defendant's undisclosed checked baggage policy that maximizes the "unaccompanied suitcases" on its passenger flights, before they paid any consideration to Defendant to fly on Defendant's passenger airplanes, and certainly before they actually boarded any of Defendant's airplanes for a passenger flight.

108.   The Class Plaintiff and the members of the Passenger Class had a right to know that their safety was being jeopardized and unnecessarily placed at greater risk by Defendant's undisclosed checked baggage policy that maximizes the "unaccompanied suitcases" on its passenger flights, before they paid any consideration to Defendant to fly on Defendant's passenger airplanes, and certainly before they actually boarded any of Defendant's airplanes for a passenger flight.

109.   Defendant United Airlines had a duty to disclose to the Class Plaintiff and the members of the Checked Baggage Fee Classes the Defendant's undisclosed checked baggage policy that maximizes the "unaccompanied suitcases" on its passenger flights, before they paid any consideration to Defendant to fly on Defendant's passenger airplanes, and certainly before they actually boarded any of Defendant's airplanes for a passenger flight, and had an additional duty to disclose to them that their checked bags were much more likely to be delayed under

Defendant's undisclosed checked baggage policy by being placed on a second earlier departing plane than their flight.

110.   The Class Plaintiff and the members of the Checked Baggage Fee Classes had a right to know that their safety was being jeopardized and unnecessarily placed at greater risk by Defendant's undisclosed checked baggage policy that maximizes the "unaccompanied suitcases" on its passenger flights, before they paid any consideration to Defendant to fly on Defendant's passenger airplanes, and certainly before they actually boarded any of Defendant's airplanes for a passenger flight, and, in addition, had a right to know that their checked bag was much more likely to be delayed under Defendant's undisclosed checked baggage policy by being placed on a second earlier departing plane than their flight, before they paid any checked baggage fee to Defendant and before they checked their bag with Defendant.

111.   Defendant omitted and concealed its undisclosed checked baggage policy from Class Plaintiff and the Classes.   Class Plaintiff and the Classes did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Defendant had its undisclosed checked baggage policy before they paid any consideration to Defendant to fly on Defendant's passenger airplanes, and before they actually boarded any of Defendant's airplanes for a passenger flight.

112.   Defendant omitted and concealed its undisclosed checked baggage policy from Class Plaintiff and the members of the Checked Baggage Fee Classes.   Class Plaintiff and the members of the Checked Baggage Fee Classes did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Defendant had its undisclosed checked baggage policy before they paid any consideration to Defendant to fly on Defendant's passenger airplanes, and before they actually boarded any of Defendant's airplanes for a passenger flight, and

before they paid any checked baggage fee to Defendant and before they checked their bag with Defendant.

113. Defendant was under a continuous duty to disclose to Class Plaintiff and the members of the Classes its undisclosed checked baggage fee policy.

114. Defendant was under a continuous duty to disclose to Class Plaintiff and the members of the Checked Baggage Fee Classes its undisclosed checked baggage fee policy.

115. Defendant intentionally, knowingly, affirmatively, and actively omitted and concealed its undisclosed checked baggage policy from Class Plaintiff and the members of the Classes with the intent to defraud them.

116. Defendant intentionally, knowingly, affirmatively, and actively omitted and concealed its undisclosed checked baggage policy from Class Plaintiff and the members of the Checked Baggage Fee Classes with the intent to defraud them.

117. Defendant intentionally omitted and concealed material facts concerning the increased risk of safety to Class Plaintiff and the members of the Classes from Defendant's undisclosed checked baggage policy that maximizes the "unaccompanied suitcases" on its passenger flights.   Defendant intentionally did not tell Class Plaintiff or the members of the Classes of Defendant's undisclosed checked baggage policy that maximizes the "unaccompanied suitcases" on its passenger flights.

118. Defendant intentionally omitted and concealed material facts concerning the increased likelihood that the checked bags the Class Plaintiff and the members of the Checked Baggage Fee Classes, would be delayed at their ultimate travel destination due to Defendant's undisclosed checked baggage policy that places their checked bag on a second earlier departing plane than their flight.   Defendant intentionally did not tell the Class Plaintiff and the members of the Checked

Baggage Fee Classes of Defendant's undisclosed checked baggage policy
that places their checked bag on a second earlier departing plane than their flight.

119.   Class Plaintiff and the members of the Classes reasonably relied on
Defendant's omissions and concealments, and had no way of knowing that
Defendant's omissions and concealments were false and misleading.

120.   Class Plaintiff and the members of the Checked Baggage Fee Classes
reasonably relied on Defendant's omissions and concealments, and had no way of
knowing that Defendant's omissions and concealments were false and misleading.

121.   Defendant's omissions and concealments were material to Class Plaintiff
and the members of the Classes because they concerned the increased risk of safety
to Class Plaintiff and the members of the Classes from Defendant's undisclosed
checked baggage policy that maximizes the "unaccompanied suitcases" on its
passenger flights.

122.   Defendant's omissions and concealments were also material to Class
Plaintiff and the members of the Checked Baggage Fee Classes because they
concerned the increased risk of safety to Class Plaintiff and the members of the
Checked Baggage Fee Classes from Defendant's undisclosed checked baggage
policy that maximizes the "unaccompanied suitcases" on its passenger flights, and,
in addition, because they concerned the increased likelihood that their checked
bags would be delayed at their ultimate travel destination due to Defendant's
undisclosed checked baggage policy that places their checked bag on a second
earlier departing plane than their flight.

123.   Defendant had a duty to disclose to Class Plaintiff and the members
 of the Classes, the Defendant's undisclosed checked baggage policy that
maximizes the "unaccompanied suitcases" on its passenger flights, because the
said policy and its details were known and/or accessible only to the Defendant,

Defendant had exclusive knowledge as to the implementation and maintenance of its said policy, and Defendant knew the facts were not known to, or reasonably discoverable by, Class Plaintiff and the members of the Classes.

124.   Defendant had a duty to disclose to Class Plaintiff and the members of the Checked Baggage Fee Classes, the Defendant's undisclosed checked baggage policy that maximizes the "unaccompanied suitcases" on its passenger flights and that increases the likelihood that their checked bags would be delayed at their ultimate travel destination due to Defendant's said undisclosed checked baggage policy that places their checked bag on a second earlier departing plane other than their flight, because the said policy and its details were known and/or accessible only to the Defendant, Defendant had exclusive knowledge as to the implementation and maintenance of its said policy, and Defendant knew the facts were not known to, or reasonably discoverable by, Class Plaintiff and the members of the Checked Baggage Fee Classes.

125.   These omitted and concealed facts were material because they directly impact the increased risk of safety to Class Plaintiff and the members of the Classes from Defendant's undisclosed checked baggage policy that maximizes the "unaccompanied suitcases" on its passenger flights, and the true facts are material concerns to a reasonable airline passenger who is concerned with the safety of himself and his family traveling with him on an airplane.

126.   These omitted and concealed facts were material because they directly impact the increased risk of safety to Class Plaintiff and the members of the Checked Baggage Fee Classes from Defendant's undisclosed checked baggage policy that maximizes the "unaccompanied suitcases" on its passenger flights, and because they directly impact the increased likelihood that the checked bags of the Class Plaintiff and the members of the Checked Baggage Fee Classes would be

delayed at their ultimate travel destination due to Defendant's undisclosed checked baggage policy that places their checked bag on a second earlier departing plane other than their flight, and the true facts are material concerns to a reasonable airline passenger who is concerned with the safety of himself and his family traveling with him on an airplane, and who is concerned that his checked bag is available for him to pick up when he arrives at his ultimate travel destination.

127.   Defendant omitted, concealed and/or suppressed these material facts, in whole or in part, to protect its profits and to avoid the perception that its flights had an increased safety risk due to the Defendant's undisclosed checked baggage policy that maximizes the "unaccompanied suitcases" on its passenger flights, and it did so with the intent to defraud, and at the expense of, Class Plaintiff and the members of the Classes.

128.   Defendant omitted, concealed and/or suppressed these material facts, in whole or in part, to protect its profits and to avoid the perception that its flights had an increased safety risk due to the Defendant's undisclosed checked baggage policy that maximizes the "unaccompanied suitcases" on its passenger flights, and to avoid the perception that there was an increased likelihood that the checked bags of its passengers would be delayed at their ultimate travel destination due to Defendant's undisclosed checked baggage policy that places their checked bag on a second earlier departing plane than their flight, and it did so with the intent to defraud, and at the expense of, Class Plaintiff and the members of the Checked Baggage Fee Classes.

129.   Class Plaintiff and the members of the Classes had no knowledge of the omitted material facts and would have acted differently if they had known of the omitted, concealed and/or suppressed facts, in that they would not have paid Defendant any consideration to fly on its passenger flights, or would have paid less

consideration to fly on its passenger flights.

130.   Class Plaintiff and the members of the Checked Baggage Fee Classes had no knowledge of the omitted material facts and would have acted differently if they had known of the omitted, concealed and/or suppressed facts, in that they would not have paid Defendant any consideration to fly on its passenger flights, or would have paid less to fly on its passenger flights, and, in addition, they would not have paid Defendant any amount for checked baggage fees, or would have paid a lesser amount for checked baggage fees.

131.   Class Plaintiff's and the members of the Classes' actions were justified.

132.   Class Plaintiff's and the members of the Checked Baggage Fee Classes' actions were justified.

133.   Defendant was in exclusive control of the material facts, and such facts were not known to the public, Class Plaintiff, or members of the Classes.

134.   Defendant was in exclusive control of the material facts, and such facts were not known to the public, Class Plaintiff, or members of the Checked Baggage Fee Classes.

135.   Because of the omission, concealment and/or suppression of the facts, Class Plaintiff and the members of the Classes have sustained damage because they would not have paid Defendant any consideration to fly on its passenger flights, or would have paid Defendant less to fly on its passenger flights.

136.   Because of the omission, concealment and/or suppression of the facts, Class Plaintiff and the members of the Checked Baggage Fee Classes have sustained damage because they would not have paid Defendant any consideration to fly on its passenger flights, or would have paid Defendant less to fly on its passenger flights, and because they would not have paid Defendant any amount for checked baggage fees, or would have paid a lesser amount for checked baggage

fees.

137.   Because of the omission, concealment and/or suppression of the facts, Class Plaintiff and the members of the Checked Baggage Fee with Delayed Bags Subclass have -- in addition to the sustained damages set forth above in the immediately foregoing Paragraph 136 -- also sustained further damage because their check bags were actually delayed and not available for them to pick up at their ultimate travel destination due to Defendant's undisclosed checked baggage policy that actually placed their checked bags on a second earlier departing plane than their flight, which second plane with their checked bags only arrived at their ultimate destination after they arrived.

138.   Accordingly, Defendant is liable to Class Plaintiff and the members of the Passenger Class for rescission and/or damages in an amount to be proven at trial.

139.   Accordingly, Defendant is liable to Class Plaintiff and the members of the Checked Baggage Fee Class for rescission and/or damages in an amount to be proven at trial.

140.   Accordingly, Defendant is liable to Class Plaintiff and the members of the Checked Baggage Fee with Delayed Bags Subclass for rescission and/or damages in an amount to be proven at trial.

141.   Defendant's acts, omissions, concealments and failures to disclose were done wantonly, maliciously, oppressively, deliberately, with the intent to defraud, and in reckless disregard of the rights of Class Plaintiff and the members of the Passenger Class, in order to enrich Defendant -- and are particularly egregious given the magnitude of the potential harm to them.   To the extent permitted under applicable law Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

142.   Defendant's acts, omissions, concealments and failures to disclose were done wantonly, maliciously, oppressively, deliberately, with the intent to defraud, and in reckless disregard of the rights of Class Plaintiff and the members of the Checked Baggage Fee Class, in order to enrich Defendant -- and are particularly egregious given the magnitude of the potential harm to them.   To the extent permitted under applicable law Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

143.   Defendant's acts, omissions, concealments and failures to disclose were done wantonly, maliciously, oppressively, deliberately, with the intent to defraud, and in reckless disregard of the rights of Class Plaintiff and the members of the Checked Baggage Fee with Delayed Bags Subclass, in order to enrich Defendant -- and are particularly egregious given the magnitude of the potential harm to them. To the extent permitted under applicable law Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## VIII.   THIRD CAUSE OF ACTION -- BREACH OF CONTRACT (IN THE ALTERNATIVE)

144.   Class Plaintiff realleges and incorporates by reference all of the above and foregoing allegations and paragraphs as if fully set forth herein.

145.   Class Plaintiff brings this claim in the alternative, if the relief requested in the second cause of action herein is not granted.

146.   Class Plaintiff brings this claim for relief as an individual and as Class Plaintiff on behalf of the members of three proposed classes: the Passenger Class, the Checked Baggage Fee Class and the Checked Baggage Fee with Delayed Bags Subclass.

### Definitions

147.   The definitions set forth in Paragraphs 102, 103 and 104 supra of the second cause of action are specifically incorporated by reference as if fully set forth herein, and are used also in this claim.

### Allegations

148.   Class Plaintiff and the members of the Classes had a passenger air travel contract with Defendant to carry them by airplane flights without exposure to the risk of unnecessary potential harm while in the air on their airplane flights.

149.   Class plaintiff and members of the Checked Baggage Fee Class and members of the Checked Baggage Fee with Delayed Bags Subclass, had a checked baggage fee contract with Defendant to carry their checked bags with them on their flight so they would arrive with them at their ultimate destination.

150.   Class Plaintiff and the members of the Classes have tendered performance and/or have substantially performed all of their obligations under their passenger air travel contract with Defendant, to have entitled them to be carried by airplane

flights without exposure to the risk of unnecessary potential harm while in the air on their airplane flights.

151.   Class Plaintiff and the members of the Checked Baggage Fee Class and the members of the Checked Baggage Fee with Delayed Bags Subclass, have all tendered performance and/or have substantially performed all of their obligations under their checked baggage fee contract with Defendant, to entitle them to have their checked bags carried on their flights with them and arrive with them at their ultimate destination.   As stated supra, the Checked Baggage Fee Class paid Defendant over $3.5 billion in checked baggage fees thus far in its class period and Defendant's checked baggage fees are basically all profit.  (See Paragraphs 28-30 supra.)

152.   Defendant breached its passenger air travel contract with the Class Plaintiff and the members of the Classes by unnecessarily and needlessly exposing them to a great magnitude of potential harm under Defendant's undisclosed checked baggage policy which maximizes "unaccompanied suitcases" on their flights.   Defendant's said breach is particularly egregious given the magnitude of the potential harm.

153.   Defendant breached its checked baggage fee contract with the Class Plaintiff and the members of the Checked Baggage Fee Class and the members of the Checked Baggage Fee with Delayed Bags Subclass, by not having their checked bags carried on their flights with them so that their bags arrive with them at their ultimate destination, but, instead, by placing their bags on a second plane, other than their flight, pursuant to its undisclosed checked baggage policy.

154.   Class Plaintiff and members of the Classes have suffered damages as a result of Defendant's aforesaid particularly egregious breach of their passenger air travel contract, to the extent they were unnecessarily and needlessly exposed by

Defendant to a great magnitude of potential harm as aforesaid.   Defendant's said breach is the actual and proximate cause of the said damages suffered by Class Plaintiff and members of the Classes.

155.   Class Plaintiff the members of the Checked Baggage Fee with Delayed Bags Subclass, have suffered damages as a result of Defendant's aforesaid breach of the checked baggage fee contract by having their checked bags underlined delayed at their ultimate destination and underlined not available for them to pick up when they arrived. Defendant's said breach is the actual and proximate cause of the said damages suffered by Class Plaintiff and the members of the Checked Baggage Fee with Delayed Bags Subclass.

156.   Class Plaintiff and the members of the Classes are entitled to damages in an amount according to proof and such other relief as is appropriate considering Defendant's particularly egregious breach given the magnitude of the potential harm.

157.   Class Plaintiff and the members of the Checked Baggage Fee Class (which has paid Defendant over $3.5 billion in checked baggage fees so far in the class period) and who are a members of the Classes, are entitled to damages in an amount according to proof and such other relief as is appropriate considering Defendant's particularly egregious breach given the magnitude of the potential harm.

158.   Class Plaintiff and the members of the Checked Baggage Fee with Delayed Bags Subclass are entitled to damages in an amount according to proof and such other relief as is appropriate considering Defendant's particularly egregious breach given the magnitude of the potential harm.

## IX.   FOURTH CAUSE OF ACTION -- VIOLATION OF 15 U.S.C. §§ 1 AND 3 OF THE SHERMAN ANTITRUST ACT

159.   Class Plaintiff realleges and incorporates by reference all the above paragraphs and allegations as if fully set forth herein.

160.   This action challenges a combination, conspiracy and collusion by Defendant United Airlines with Delta Airlines, Inc. and American Airlines, Inc. to commit fraud by omission on their passengers by intentionally not disclosing to their passengers that all three have, basically, the same undisclosed checked baggage policy which maximizes "unaccompanied suitcases" on passenger flights as that of United Airlines -- and, by which joint fraud, they intended to artificially raise, fix, maintain, or stabilize the price of checked baggage fees in the United States from what it would otherwise have been had they disclosed to their passengers their aforesaid shared undisclosed checked baggage policy.

161.   The aforesaid combination, conspiracy and collusion by Defendant United Airlines (with the other two airlines) allowed them to collect their shared, same artificially high $25 checked baggage fee.

162.   If Defendant United Airlines (and the other two airlines) had disclosed their undisclosed checked baggage policy which maximizes "unaccompanied suitcases" on passenger flights, to their passengers, those passengers would probably have chosen not to accept the increased risk of safety to themselves and their families and would probably have chosen not fly at all on said airlines -- much less pay anything to check a bag with said airlines (with the increased likelihood the bag will be delayed on a second plane under said undisclosed policy).

163.   Accordingly, absent the aforesaid combination, conspiracy and collusion

by Defendant United Airlines (with the other two airlines) their shared, same artificially high $25 checked baggage fee would likely have fallen to essentially $0.

164.  Defendant United Airlines' aforesaid combination, conspiracy and collusion with Delta Airlines, Inc. and American Airlines, Inc. is indicated by the statements of Defendant's Honolulu Supervisor in charge as set forth in Paragraphs 50 to 54 herein, but especially the last Paragraph 54.

165.  Regarding the last Paragraph 54, the baggage pickup carousels that the Defendant's Supervisor in charge pointed toward generally saying "everyone does it," were to his left side and were baggage pickup carousels H-4 to H-1 and G-5 to G-1.  Those baggage pickup carousels to his left side immediately adjoining Defendant United Airlines' carousels are, apparently, used by Delta Airlines, Inc.-- which has its "Delta Baggage Service" office near carousel H-1.  The further away baggage pickup carousels to his left side are, apparently, used by American Airlines, Inc. -- which has an "American Baggage Service" office near carousel G-1.  The group of about ten people that Defendant's Supervisor in charge specifically pointed to near baggage pickup carousel H-1 when he said "see, everyone does it," were, accordingly, probably Delta Airline passengers looking for their delayed checked bags.

166.  As related in Paragraphs 50 to 54 but especially in the last Paragraph 54, Defendant's Honolulu Supervisor in charge was, basically, saying that Delta Airlines, Inc. and American Airlines, Inc. have essentially the same undisclosed checked baggage policy as does United Airlines.

167.  According to the United States Department of Transportation, Office of the Assistant Secretary for Research and Technology, Bureau of Transportation Statistics report entitled "Baggage Fees by Airline 2015," the top three United

States airlines of the 13 airlines listed, ranked by 2015 baggage fee revenue were American Airlines, Inc. (which had just combined with another airline), Delta Airlines, Inc., and United Airlines, respectively.   (The fourth ranked airline had only 43% of the checked baggage fee revenue of the third airline of the top three.) The said top three ranked airlines had a total checked baggage fee revenue of $2,673,170,000 – verses the total checked baggage fee revenue of $3,803,742,000 reported for all 13 United States airlines.   Accordingly, the top three ranked airlines in 2015, had 70.3% of all the checked baggage fee revenue for all United States airlines.

168.   The top three ranked airlines for checked baggage fee revenue in 2015 -- with over 70% of all the United States airline checked baggage fee revenue in 2015 -- are the same three airlines that engaged in the combination, conspiracy and collusion alleged herein to artificially set their shared, same artificially high $25 checked baggage fee.

169.   According to further reports from the United States Department of Transportation, Office of the Assistant Secretary for Research and Technology, Bureau of Transportation Statistics on "Baggage Fees by Airline" for the years 2014, 2013 and 2012, Defendant United Airlines was ranked second for the highest checked baggage fee revenues for each of those years 2014, 2013 and 2012 of all United States airlines.   (Delta Airlines, Inc. was ranked first in those three years.   As reviewed herein, Defendant United Airlines checked baggage pickup carousels are adjacent to those of Delta Airlines, Inc. at the Honolulu airport.)

170.   According to the United States Department of Transportation, Office of the Assistant Secretary for Research and Technology, Bureau of Transportation Statistics yearly reports entitled "Baggage Fees by Airline [for each year from

2016 to 2010],'' Defendant United Airlines collected the following revenue from checked baggage fees in the year indicated below:

|      |                |                          |
|------|----------------|--------------------------|
| 2016 | $ 262,464,000  | (first quarter year only) |
| 2015 | $ 672,222,000  |                          |
| 2014 | $ 651,857,000  |                          |
| 2013 | $ 624,821,000  |                          |
| 2012 | $ 705,547,000  |                          |
| 2011 | $ 276,817,000  |                          |
| 2010 | $ 313,207,000  |                          |

The total of the above is $3,506,935,000 and is the checked baggage fees collected by Defendant United Airlines from the Checked Baggage Fee Class thus far during the Checked Baggage Fee Class Period (from January 1, 2010 to the present).

171.   Since 2008, Defendant United Airlines (along with Delta Airlines, Inc. and American Airlines, Inc.) have charged its passengers checked baggage fees for services that were previously included in the price of a ticket.   Defendant United Airlines' checked baggage fees were simply added on and do not reflect any proportional increase in its costs.  Its checked baggage fees represent no additional costs to Defendant United Airlines.   Defendant United Airlines' checked baggage fees are essentially all profit.

172.   Defendant United Airlines has, essentially, made a profit of over $3.5 billion from the checked baggage fees paid to it by the Checked Bag Fee Class (thus far during their class period through the first quarter of 2016) by intentionally concealing from them (in a combination, conspiracy and collusion with Delta Airlines and American Airlines) that they were flying on airplanes where "unaccompanied suitcases" were intentionally maximized and, thereby, jeopardizing their safety and that of their families.

173.   During the Checked Baggage Fee Class Period, Defendant United Airlines entered into a continuing combination or conspiracy with Delta Airlines, Inc. and American Airlines, Inc. to unreasonably restrain trade and commerce in violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1 and 3) by artificially reducing or eliminating checked baggage fee competition in the United States.

174.   In particular, Defendant United Airlines agreed, combined, and conspired with Delta Airlines, Inc. and American Airlines, Inc. to raise, fix, maintain, or stabilize the price of checked baggage fees in the United States.

175.   As a result of Defendant United Airlines unlawful conduct, with said other airlines, checked baggage fees were raised, fixed, maintained and stabilized in the United States.

176.   Defendant United Airline's combination or conspiracy, with said other airlines, consisted of a continuing agreement, understanding and concerted action among them.

177.   Defendant United Airline's conspiracy, with said other airlines, had the effect of artificially inflating the checked baggage fees charged in the United States.

178.   As a direct and proximate result of Defendant United Airline's unlawful conduct, with said other airlines, Class Plaintiff and the other members of the Checked Baggage Fee Class paid more for checked baggage fees than they otherwise would have paid in the absence of Defendant's unlawful conduct.

179.   Defendant United Airlines engaged in a combination and conspiracy, with said other airlines, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1), and Class Plaintiff and the members of the Checked Baggage Fee Class have been injured in their business and property as a result of Defendant United

Airlines' violations.

180. Class Plaintiff and the members of the Checked Baggage Fee Class are entitled to recover damages sustained by them, as provided by the federal antitrust laws, and are entitled to have a judgement in favor of Class Plaintiff and the members of the Checked Baggage Fee Class be entered against Defendant United Airlines in an amount to be trebled in accordance with such laws.

181. Class Plaintiff and the members of the Checked Baggage Fee Class are entitled to recover damages sustained by them, as provided by the federal antitrust laws, in an amount not less than what they paid Defendant United Airlines for checked baggage fees during the Checked Baggage Fee Class Period. That said amount is over $3.5 billion thus far through 1Q of 2016 (see Paragraph 170 supra). They are entitled to have a judgement in their favor entered against Defendant United Airlines in an amount not less than said amount, to be trebled in accordance with federal antitrust laws.

182. Class Plaintiff and the members of the Checked Baggage Fee Class are entitled to be awarded pre-judgement and post-judgement interest, and are entitled that such interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action.

183. Class Plaintiff and the members of the Checked Baggage Fee Class are entitled to recover their costs of this suit, including reasonable attorney's fees as provided by law.

184. Class Plaintiff and the members of the Checked Baggage Fee Class are entitled to receive such other and further relief as may be just and proper.

## X. IF ANY PROPOSED CLASS IS NOT CERTIFIED

185. Class Plaintiff realleges and incorporates by reference all the above

paragraphs and allegations as if fully set forth herein.   All allegations made in this Complaint by Class Plaintiff are also made by Plaintiff II as if fully set forth herein.   All claims and allegations made herein are jointly asserted by Class Plaintiff and by Plaintiff II as individuals.   If Defendant had disclosed its "undisclosed checked baggage policy" which maximizes "unaccompanied suitcases" on its passenger flights (as set forth herein), Class Plaintiff and Plaintiff II would not have flown on United Airlines at all, and would not have paid United Airlines any checked bag fees, or any other sums.

186.   If any proposed class herein is not certified, then Class Plaintiff, as an individual, and Plaintiff II, as individual, are entitled to the same relief as prayed for that proposed class, but on an individual, proportional basis.

## PRAYER FOR RELIEF

WHEREFORE, relief is prayed for as follows:

(1)   Class Plaintiff, individually and on behalf of all members of the three proposed classes herein, and for members of the general public, requests that this Honorable Court enter judgement adjudging and decreeing as follows:

(a)   This action may proceed as a class action, with Class Plaintiff as the designated representative of the three proposed classes herein and her counsel as Class Counsel.

(b)   For the Declaratory Judgement requested in the First Cause of Action;

(c)   For an award of compensatory damages and any additional, consequential and incidental damages and costs suffered by Class Plaintiff and members of the three proposed classes herein due to Defendant's wrongful conduct;

(d)   For an award of punitive damages for the Second Cause of Action;

(e)   For rescission, restitution, damages, punitive damages, disgorgement and unjust enrichment in an amount according to proof;

(f)   Defendant engaged in a combination and conspiracy in violation of section 1 of the Sherman Act (15 U.S.C. § 1), and Class Plaintiff and members of the proposed Checked Baggage Fee Class have been injured in their business and property as a result of Defendant's violation;

(g)   Class Plaintiff and members of the proposed Checked Baggage Fee Class may recover damages sustained by them, as provided by federal antitrust laws, and that a judgement in favor of Class Plaintiff and members of the proposed Checked Baggage Fee Class be entered against Defendant in an amount to be trebled in accordance with such laws;

(h)   For pre-judgment and post-judgement interest, and that such interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

(i)   For their costs of this suit, including reasonable attorney's fees as provided by law: and

(j)   For such other and further legal and equitable relief as this Court may deem proper.

(2)  If any proposed class is not certified as prayed in Paragraph (1) above, then Class Plaintiff, as an individual, and Plaintiff II, as an individual, be awarded their individual prorated portion of the relief sought in Paragraphs (1)(a) to (j) above for that said proposed class.

## DEMAND FOR JURY TRIAL

Trial by jury is demanded of all claims triable by jury.


DATED:  Honolulu, Hawaii, July 20, 2016.


/s/ Barton Marshall Watson
Barton Marshall Watson
Attorney for Plaintiffs